NEW YORK LIFE INSURANCE COMPANY *v.* JACKSON.

4-3222

Opinion delivered December 4, 1933.

Louis H. Cooke and Rose, Hemingway, Cantrell & Loughborough, for appellant.

John Sherrill and Osro Cobb, for appellee.

SMITH, J. The recent case of *New York Life Insurance Company* v. *Farrell,* 187 Ark. 984, 63 S. W. (2d) 520, decides the exact question which is controlling here. In that case the insured had two policies in the New York Life Insurance Company, each for $5,000. In the instant case there were two policies, written by the same company, each for $10,000. The opinion in the Farrell case, *supra,* sets out the provisions of the policies there sued on in regard to disability insurance, which read as follows:

"Whenever the company receives due proof, before default in the payment of premium, that the insured, before the anniversary of the policy on which the insured's age at nearest birthday is 60 years, and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days, the permanent loss of sight of both eyes, or the severance of both hands or

of both feet, or of one entire hand and one entire foot, to be considered a total and permanent disability without prejudice to other causes of disability—Then

"1. Waiver of Premium.—Commencing with the anniversary of the policy next succeeding the receipt of such proof, the company will on each anniversary waive payment of the premium for the ensuing insurance year, and, in any settlement of the policy, the company will not deduct the premiums so waived. The loan and surrender values provided for under sections 3 and 4 shall be calculated on the basis employed in said sections, the same as if the waived premiums had been paid as they became due.

"2. Life Income to Insured.—One year after the anniversary of the policy next succeeding the receipt of such proof, the company will pay the insured a sum equal to one-tenth of the face of the policy and a like sum on each anniversary thereafter during the lifetime and continued disability of the insured. Such income payments shall not reduce the sum payable in any settlement of the policy. The policy must be returned to the company for indorsement thereon on each income payment. If there be any indebtedness on the policy, the interest thereon may be deducted from each income payment."

Beginning about June 23, 1920, Gus Bertner, a soliciting agent for the appellant insurance company, wrote a number of life policies for Bruen O. Jackson. These policies exceeded, in the aggregate, over $200,000, the exact amount not being certain or important. Two of these policies, each of $10,000, contained, in identical language, the disability provisions copied above from the opinion in the Farrell case, *supra.*

In 1926, and while these two policies were in full force and effect, Jackson, the insured, became totally disabled, and remained so until his death, which occurred in 1932.

Jackson was a dealer in spot cotton and had a large number of bales of cotton on hand when the collapse of the cotton market wiped out his very considerable private fortune and wrecked his health. The testimony is practically undisputed that Jackson was totally disabled to

work or earn money since the latter part of 1926 to the date of his death. It is also clear that, had Jackson made the proof of this disability which the policies required, he would have been entitled to the disability benefits which his widow, as the administratrix of his estate, has brought this suit to recover.

At the trial from which this appeal comes, the court gave, over the appellant's objection, an instruction reading as follows: "No. 3. You are instructed that, if you believe from the evidence that the insured became totally and permanently disabled prior to the lapse of the policies sued on herein, and that he explained his condition fully to the special agent of the defendant and asked the agent to take the matter up with the company of adjusting and settling his rights under the policies, and that the local agent had knowledge of his financial and physical condition during the life of the policies, then you are instructed that the plaintiff is entitled to recover upon said policies."

The special agent to whom the instruction referred was Bertner, who had written all the policies, and there was testimony to the effect that Bertner knew Jackson was totally disabled, and there had been conferences between them in regard to the policies, especially in relation to their loan values. Bertner testified that he had written thousands of other policies, and that he did not have in mind that the policies here sued on contained provisions for disability benefits, and that he had not been requested to make any report to the insurance company in regard to Jackson's disability.

On January 16, 1932, the insured himself wrote the following letter to the general agent of the insurance company at Little Rock:

"As you probably know, at one time I carried quite an amount of insurance with your company, but due to severe financial reverses and failing health, causing my inability to work for gain or profit, I have been forced to drop several policies. A short while ago I asked an insurance man to go over my old policies to determine if I could in any way reinstate or derive some benefit

from any which I had presumed to be valueless. The above-numbered policy was brought to my attention.

"I find that the contract carried disability benefits and was in force from May 18, 1920, until May 18, 1928, on which date the automatic option of extended insurance seems to have gone into operation, due to my inability or failure to pay the premium. I can offer proof from competent, well-qualified and well-known physicians of this city that, beginning in January, 1927, I was adjudged by them to be totally and permanently disabled. I have the receipt for the premium on this policy due in May, 1927, and, according to the terms of the disability provisions, if I had notified you and proved my disability, that premium would have been waived as well as payment made to me of $1,000 a year. Naturally, being financially embarrassed at the time and physically unable to earn any money, I was not able to buy any new life insurance, and I would have been very pleased to have benefited by the waiver of premium option, which, according to the contract, I deserved.

"I desire that you forward this letter, with any comments you care to make to your home office, stating to them that I can furnish ample proof for my disability claim, and asking them if, assuming that the proof is competent, they will reinstate the contract and reimburse me for any just claim I might have. * * *

"I feel that this policy should be reinstated, and that I should pay the premiums due in May, 1930, and May, 1931, because I was receiving remuneration from my office of State Purchasing Agent during that time.

"Thanking you in advance for any services you can render me regarding this matter and assuring you of my continued good will toward you and your company, I am," etc.

This letter appears to corroborate the testimony of Bertner very conclusively. However, it is entirely certain that Bertner made no such report, whether requested to do so or not, and no report of any kind was made to any one except to Bertner.

It is quite obvious that the discussion between Jackson, the insured, and Bertner, the agent, more or less

casual, did not meet the requirement of the policy in regard to proof of disability.

It is insisted, however, that it is the fact of disability, and not proof thereof, which entitled the insured's administratrix to recover for the benefit of his estate the disability benefits to which the insured himself was entitled. This was the theory upon which the Farrell case was tried, and a judgment recovered. The opinion in that case sets out an instruction which permitted a recovery upon the finding that the insured was permanently disabled within the meaning of the policy sued on, which, as has been shown, is identical with the policy here sued on.

We held the instruction was erroneous, and should not have been given, and in that connection it was said:

"This instruction was erroneous and should not have been given. The provisions of the policies are set out above, and each one provides that, commencing with the anniversary of the policy next succeeding the receipt of such proof, the company will waive payments, etc.

"It is perfectly plain from this provision of the policy that it waives premiums only commencing with the anniversary of the policy next after proof of loss is made, and it will be observed, from the second paragraph above quoted from the policy, that one year after the anniversary of the policy next succeeding proof of loss, the company will pay. It was therefore improper to instruct the jury that the payments continued throughout the time of appellee's disability. The provisions of the policy providing for payment are plain and unambiguous. The liability attached when the disability occurred and proof of loss was made. The company, however, did not promise to pay from the time the disability occurred, but from the time fixed in the policy itself."

The conclusion announced was based upon the decision of the Supreme Court of the United States in the case of *Bergholm* v. *Peoria Life Ins. Co.,* 284 U. S. 489, 52 S. Ct. 230, as appears from the quotation there copied into our opinion from the opinion of the case cited.

The judgment of the court below must therefore be reversed, as there was no such proof of disability as the

policy required, and, as the cause appears to have been fully developed, it must be dismissed, and it is so ordered.