MISSOURI STATE LIFE INSURANCE COMPANY v. CASE.

4-3458

Opinion delivered May 7, 1934.

224

Allen May, J. R. Burcham, Dene H. Coleman, Charles Frierson, Jr., and Chas. D. Frierson, for appellants.

Ernest Neill and Shields M. Goodwin, for appellee.

BUTLER, J. On November 12, 1920, the Missouri State Life Insurance Company issued its policy in favor of Dr. William Byers Case, under the terms of which, in consideration of the payment in advance of the sum of $200.25 and the further payment of like sums on or before the 12th day of November of each year thereafter, his life was insured in an amount of $5,000. The policy provided for total and permanent disability benefits in the sum of $50 per month, in consideration of which the insured paid, on the dates aforesaid, an annual premium of $16.45. The annual premiums were paid each year up to and including the policy year ending November 12, 1929. Notice of the maturity of this premium was given Dr. Case, and at the expiration of the thirty-day grace period, a letter was addressed to and received by him, advising that the policy was forfeited and at an end for the nonpayment of the premium falling due on the last-mentioned date. He was also advised of his right to reinstatement

of the policy upon the performance of certain conditions. Dr. Case did not answer these letters.

In February, 1932, Dr. Case was committed to the State Insane Asylum, and on August 25, 1932, the attorney for the appellee notified the insurance company that the insured had been totally and permanently disabled from permanent insanity; that he had been so disabled since sometime in the summer of 1929, and was at that time a patient in the State Hospital for Nervous Diseases in the city of Little Rock. Demand was made for the payment of disability benefits at the rate of $50 per month and a request that the company furnish forms on which proof could be made. On September 6, 1932, the company, answering the notice and claim, advised that the policy had lapsed for the nonpayment of premium and interest due November 12, 1929. Shortly after this Dr. Case died in the State Hospital. Notice of his death was immediately given the company with demand for the payment of the death claim. In due time this claim was also declined by the company for the same reason assigned in its answer to the demand for monthly benefits made during the lifetime of the insured.

On the 13th of March, 1933, Miss Robert Ella Case brought suit as administratrix of the estate of Dr. Case to recover disability benefits at the rate of $50 per month from May 1, 1929, to October 18, 1932, the date of Dr. Case's death, less the amount of a certain policy loan of $955 and interest due thereon, on the allegation that, while the policy was in full force and effect, the insured was, from May 1, 1929, until the date of his death, totally and permanently disabled by reason of permanent insanity, to the extent of preventing him from engaging in any gainful occupation. It was also alleged that, because of the permanent insanity, no notice of the disability was given the company.

The General American Life Insurance Company, having assumed the liabilities of the Missouri State Life Insurance Company, was made a party defendant. The latter company filed its separate answer, admitting that it would be bound if a judgment was rendered against

the Missouri State Life Insurance Company, which company answered denying the material allegations of the complaint except that all premiums had been paid on the policy to November 12, 1929, which it admitted, and defended on the affirmative ground that the policy had lapsed for the nonpayment of the premium due November 12, 1929, and certain other affirmative defenses.

The case was tried and the jury found that Dr. Case was totally and permanently disabled from permanent insanity from July 1, 1929, to October 18, 1932, and returned a verdict in favor of the plaintiff in the sum of $872.04, the amount of the monthly benefits accruing between those dates, less the policy loan and interest. From that judgment is this appeal.

Here, as in the court below, the appellant insists there can be no recovery because of insufficient proof to show permanent and total disability at a time prior to the maturity of the premium due in 1929. It may be first stated that the insured, at the time of his death, was 61 years of age and had been for many years a popular and successful country practitioner, that being the only profession or vocation in which he had ever engaged except in 1920 when he abandoned it for a few months and attempted to write life insurance. He soon gave this up, however, and returned to his practice of medicine. He appeared to be fairly happy and successful, except for a short period in 1920, up and until 1927. From that time on it seems he began to slip. Early in his practice he was located in Cleburne County where he was popular and had a considerable practice. In the early spring of 1919 he returned to that county, and it is from that time until his commitment to the State Hospital with which the testimony has principally to deal relative to his mental condition.

The appellant calls attention to the testimony to the effect that during that period Dr. Case discussed with some of the witnesses current subjects with apparent intelligence; that he spoke of his insurance and said that he was fearful it would lapse because of his in-

ability to meet the premiums; that he discussed with some of them his method of bookkeeping and his success in making collections for the practice he had done. Also that he made calls on patients and some witness who had called the doctor in his professional capacity testified that his services were satisfactory. This evidence, it is argued, was sufficient to show that Dr. Case was not incapacitated for any reason, or prevented from following his usual occupation, and therefore was not totally and permanently disabled to the extent that he could not pursue any gainful occupation as provided for in the policy.

In construing provisions in policies relating to total and permanent disability sufficient to prevent the insured from engaging in any gainful occupation, the rule has been often stated to the effect that we do not give to these provisions a strict and literal interpretation, on the theory that a fair intention of the parties to the contract of insurance is that the insured shall receive indemnity when he is disabled to the extent that he is unable to carry on any business which, without the disability, he would be able to do or capable of engaging in. Therefore, to come within the meaning of the contract of indemnity, it is not required that the insured shall be absolutely helpless, but he is totally disabled when the infirmity from which he suffers renders him unable to perform all the substantial and material acts of his business or the execution of those acts in the usual and customary way. *Aetna Life Ins. Co.* v. *Spencer,* 182 Ark. 496, 32 S. W. (2d) 310; *Mutual Life Ins. Co.* v. *Marsh,* 186 Ark. 861, 56 S. W. (2d) 433, and cases there cited.

When we consider the testimony to which reference has been made in connection with all of the testimony in the case, we think the evidence preponderates in favor of, and sustains, the finding of the jury. Several of Dr. Case's old friends, on his return to Cleburne County where he had formerly resided and practiced his profession, were scarcely able to recognize him because he was so changed. Formerly he had been a man careful

of his personal appearance, amiable and loving the society of his fellows. Now he was unkempt, morose and retiring. He was unable to recall incidents of his young manhood which were likely to stand out in his memory. Those who called him in professionally, remembering his former skill, were greatly disappointed; he seemed to be uncertain what to do and neglectful of his patients. This was his condition as far back as April, 1929, and there is evidence to the effect that it continued throughout that year into 1930, when he became so helpless that his sister, Miss Case, took him to the home of his brother Ed Case, a farmer living near Heber Springs, where he was cared for, Miss Case paying her brother a reasonable amount for his care. Dr. Case remained there until he was committed to the State Hospital totally insane, where he remained in that condition until he died a few months after his admission. It was in testimony that he was suffering from a physical ailment which affected his brain, and in the opinion of the superintendent of the hospital this condition had lasted for several years. It is true that other expert witnesses testified that in their opinion Dr. Case was not insane in 1929, but, as we have stated, there is substantial evidence to sustain the finding of the jury.

The principal contention, however, is that urged in the second section of appellants' brief that the proof of disability constituted a condition precedent to liability, and the failure to give such proof before the lapse of the policy would prevent a recovery. To sustain this contention, appellants rely chiefly on the case of *Bergholm* v. *Peoria Life Ins. Co.*, 284 U. S. 489, 52 S. Ct. 230, conceded by them to be out of harmony with our decisions in the cases of *Pfeiffer* v. *Mo. State Life Ins. Co.*, 174 Ark. 783, 297 S. W. 847; *Old Colony Life Ins. Co.* v. *Julian*, 175 Ark. 359, 299 S. W. 366; and *Mo. State Life Ins. Co.* v. *Holt*, 186 Ark. 672, 55 S. W. (2d) 788. But the argument is made that our later cases seem to modify the rule announced in the cases above cited and evidence a feeling of this court "to get back into the line of authority following the Bergholm decision in the Supreme Court of the United States." The cases thought to be a

modification of our previous decisions are: *Ætna Life Ins. Co.* v. *Davis,* 187 Ark. 398, 60 S. W. (2d) 912; *Atlas Life Ins. Co.* v. *Wells,* 187 Ark. 979, 63 S. W. (2d) 533; *N. Y. Life Ins. Co.* v. *Farrell,* 187 Ark. 984, 63 S. W. (2d) 520; *Business Men's Assur. Co.* v. *Selvidge,* 187 Ark. 1040, 63 S. W. (2d) 640; *N. Y. Life Ins. Co.* v. *Jackson,* 188 Ark. 292, 65 S. W. (2d) 904; *Pac. Mutual Life Ins. Co.* v. *Dupins,* 188 Ark. 450, 66 S. W. (2d) 284; *Home Indemnity Co.* v. *Banfield Bros. Packing Co.,* 188 Ark. 683, 67 S. W. (2d) 203; *Mass. Protective Ass'n* v. *Jurney,* 188 Ark. 821, 68 S. W. (2d) 455.

We are asked to read these cases, especially to refresh our memory by reading the opinion in the Farrell case, which, it is claimed, puts our court directly in line with the Bergholm case. We have re-examined these cases and fail to find anything which modifies or impairs the case of *Pfeiffer* v. *Mo. State Life Ins. Co., supra,* or the cases following and approving that decision; nor, indeed, in our opinion, is the Bergholm case in conflict with the doctrine of those cases for the reason, as stated in the case of *Mo. State Life Ins. Co.* v. *Foster,* 188 Ark. 1116, 69 S. W. (2d) 869: ''In the case referred to (the Bergholm case) by plain and definite language the payment of premiums up to the filing of proof of disability was made a condition precedent to the right of recovery.'' Such was not the provision relative to proof of disability in the Pfeiffer, Julian and Holt cases, *supra.* Nor, as pointed out by the appellee, was there any question of the insanity of the insured involved in the Bergholm case.

In *Ætna Life Ins. Co.* v. *Davis, supra,* the court, when considering the contention that the failure of the insured to make proof to the insurer as required by the policy ninety days prior to the expiration of the policy defeats recovery, had before it the language of the contract. In that connection we said: ''In order to sustain the contention of the appellant, something must be read into the policy which the appellant company failed to incorporate therein. The only restriction we find in the contract is that no recovery can be had for a period of

time greater than six months previous to the date the proof of disability is made and received by the company where it is not made and received within ninety days after the disability has commenced. There is no mode specified by which the proof of loss is required to be made or how it is to be transmitted to the insurer. From a fair consideration of the contract, the right to recover must be based on the total and permanent disability occurring during the life of the contract and not on any particular time when proof is made and received.'' The point decided was that the failure to make the proof ninety days prior to the expiration of the policy did not defeat the right to recover for the reason that the proof was intended to give the insurer an opportunity to investigate the facts affecting the question of liability and the extent thereof, and that the end is served when the complaint is filed where no claim is made for benefits accruing before the filing of the complaint, or any claim made for penalty or attorney's fee.

In *Atlas Life Ins. Co.* v. *Wells* and *New York Life Ins. Co.* v. *Farrell, supra,* suits were brought, not for breach of contract, but were based upon it. In the Farrell case the provision was: ''Whenever the company receives due proof before default in the payment of premiums that the insured * * * has become wholly disabled by bodily injury or disease, etc. * * *,'' and then provided ''that beginning with the anniversary of the policy next succeeding the receipt of such proof, the company will waive payment of the premiums, and one year after the receipt of the proof the company will pay the insured a sum equal to one-tenth of the face of the policy and a like sum annually thereafter during the life and continuing disability of the insured.'' These provisions were wholly unlike those involved in the cases which it is thought are modified by the Farrell case, and it will be noted, as stated by the court that the case being considered ''is not a suit for breach of contract, but a suit on the policy, and the policy expressly provides when payment shall begin.''

An examination of the case of *Business Men's Acc. Ins. Co.* v. *Selvidge, supra,* where it was held that the failure to give notice as provided in the policy barred recovery, shows that it was because by the express terms of the contract the giving of notice was made a condition precedent to the right of recovery.

In the Jackson case, *supra,* it was alleged and proved that the insured became totally disabled in 1926 when the policy was in full force and effect; that the policy was extended until May, 1928, when it expired. Jackson died four years later and after his death suit was instituted. The court found that the permanent disability clause in the policy was identical with that in the Farrell case and controlled by that case.

In none of these cases, however, was the sanity of the insured brought in question, whereas in the case at bar the jury found on sufficient proof that the insured was totally and permanently disabled on account of insanity during the life of the policy. This finding, under the rule announced in *Pfeiffer* v. *Mo. State Life Ins. Co., supra,* obviated the necessity of making proof by the insured. The court there said: "If the insured has become permanently insane at the time that permanent disability attaches, it is evident that he is in no condition of mind to give the notice or make proof of his disability. * * * It should be said that permanent insanity, which causes, in whole or in part, permanent disability should operate to excuse the insured from giving the required notice. The very object and purpose of the policy, in a large part, would be defeated where the company inserted in the policy a condition which it knew that the insured could not perform in person and would not be in a state of mind to obtain its performance at the hands of others. There is nothing in the terms of the policy from which it might be said that it was the duty of the beneficiary to give the notice."

In *Old Colony Ins. Co.* v. *Julian, supra,* the doctrine announced in the Pfeiffer case was reaffirmed and also in the later case of *Mo. State Life Ins. Co.* v. *Holt, supra.* In the Pfeiffer case the clause of the policy with

respect to giving notice of permanent disability was identical with the language of the policy in the case at bar. It was there held that the clause relating to notice was a condition subsequent and should be construed liberally in favor of the beneficiary.

In connection with the contention that the failure by the insured to make proof barred recovery, it was argued that, that not having been done by him, it became the duty of the beneficiary under the facts in this case to give notice and make proof of the existence of the disability, and that her neglect in this regard precludes recovery. It is insisted that she knew, or ought to have known, of the mental derangement of her brother, Dr. Case, in 1929, or at least in 1930, and that the evidence makes it plain that she had ample opportunity to ascertain his condition. It is argued that she was favored by him beyond his other kinsmen, and that the ties between them were particularly close. She was named the beneficiary in the policy, and doubtless Dr. Case rightfully preferred her to the other members of his family for the evidence is clear that she was the burden bearer of them all. It is also apparent, however, that she saw her brother infrequently and was never associated with him a sufficient length of time to arrive at a just conclusion as to his mental state. She knew he had had family troubles and business reversals; she knew that he was frequently discouraged, but there were no facts under her observation which might be rightfully said to be sufficient for her to know that he was insane. It is also contended that she knew all along that the policy carried disability benefits and that she had, herself, stated that she had been familiar with the policy for a good many years. We are referred to the pages of the transcript wherein it is claimed this evidence is to be found, but we fail to find any evidence to show that she was familiar with the terms of the policy or that she knew that it contained the disability clause and had knowledge of the provision regarding the notice and proof of disability. The most that can be said is that she knew that her brother carried a policy of life in-

surance; that she knew that she was the beneficiary in such policy, for on occasions she was called on to join with her brother in the execution of notes to procure loans. But this was a matter to which she gave but little attention. It is fairly inferable that the loans were to continue the policy in force and that she received none of the proceeds of such, although there is no definite evidence to this effect. She paid so little attention that she had entirely forgotten about the execution of one of these notes until it was called to her attention during the progress of the trial of the case. The first time she became aware of the deterioration of her brother was when she carried him to the home of Ed Case, and then she was not aware of the cause of his condition. About that time she asked Dr. Case about his life insurance, and he told her that the policy had lapsed.

The evidence leads to the reasonable conclusion that Miss Case did not know that her brother was insane until a short time before he was committed to the asylum. Just when she came into possession of the policy is not shown, but it is likely that it was about that time, and it was then she had the first intimation of what the rights of her brother might be under the policy. She wrote a letter in her brother's name asking when the last premium had been due and how the policy might be reinstated. She is criticized because, in this and in subsequent letters to the insurance company, she did not inform it of the insanity of her brother. Whatever her reasons might have been for not conveying this information, it could certainly work no prejudice to the insurer, for it had renounced the policy long before.

Attention is also called to the fact that Miss Case did not offer to reinstate and did not reply to the appellant's letters regarding reinstatement. There was no reason for her taking any action in this regard, for the requirement for reinstatement was that the insured must be in good health, and, of course, she knew that her efforts to reinstate would be futile. As soon as she became aware of a possibility of liability to her brother for disability benefits, she began to investigate as to his men-

tal condition during 1929 and 1930. Based upon this investigation a letter was written by her attorney notifying the insurer of the insanity of Dr. Case and making demand of payment of disability benefits. It seems to us, assuming, but not deciding, that it was her duty as beneficiary to give notice of the disability, this duty could only arise when she became aware that the insured was not in a mental condition to give notice himself or to make the proofs, and then not until she had had a reasonable opportunity to inform herself in regard to the facts on which claim of disability would be made.

In the third section of appellant's brief it is contended that the plaintiff and the insurance company interpreted the contract as having lapsed, and that this interpretation is binding upon the plaintiff and prevents recovery. Of course, if Dr. Case was insane, he was in no condition to interpret the contract, and his interpretation that it had lapsed was not binding on him or any one else. Miss Case knew what her brother had told her as to the lapse of the policy, but at that time she was not aware of his mental condition, nor of the terms of the policy. We see nothing in the letters written by Miss Case to the insurer that would be a basis for the contention that she had interpreted the policy as contended for by the insurer, or that she acquiesced in its interpretation. There can be no doubt that, if Dr. Case had been possessed of sufficient mentality to realize the extent of his disability, he would have made proof, but it is not often that an insane man realizes he is such, and surely in this case, had Miss Case known of the provisions of the policy and been aware of the rights of her brother thereunder, she, too, would have given notice.

The fourth contention is that the court erred in construing the policy as having been extended thirty-one days after November 12, 1929, and in so instructing the jury. No prejudice resulted for the reason that the court, in subsequent instructions, told the jury that before returning a verdict for the plaintiff, it must find

that Dr. Case was totally disabled from permanent insanity at all times after October 1, 1929.

The fifth ground for reversal is that the amount of recovery was excessive. To support this contention we are again referred to the cases of this court thought to modify the rule relating to proofs of loss not being conditions precedent to attachment of liability. As we have observed, the Farrell and Wells cases were suits based on contracts, whereas in the case at bar there was a repudiation of the contract by the insurer—first, by a letter written to Dr. Case and later reaffirmed in a letter to the attorney for the appellee. Therefore, the rule in *Ætna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335, controls, in which a contention like that in the instant case was rejected, the court saying: "Appellant next contends for a reversal of the judgment because nothing was due appellee under the terms of the permanent total disability clause when this suit was commenced, claiming that liability under the clause did not begin until six months after the final proof of the injury and disability was made. In other words, that liability did not begin when the injury and consequent disability occurred. The correct construction of the clause is that liability began with the disability. As stated above, and for the reasons given, the purpose of the policy was to compensate the insured during the period of permanent and total disability."

The case of *Smith* v. *Mutual Life Ins. Co.*, 188 Ark. 1111, 69 S. W. (2d) 874, in no wise alters the doctrine of *Ætna Life Ins. Co.* v. *Phifer, supra.* In that case the court held that the furnishing of proof of disability is not a prerequisite to the maintenance of suit for recovery, that right only being postponed until proof is furnished.

There is another reason why the contention of the appellant that the Bergholm case and recent cases of this court that a recovery under the provisions of the policy involved is limited to the payment of $50 six months after the proofs are received, and $50 each month thereafter during the life of the insured, etc., is not

sound. That is not the language of the policy, nor is the language susceptible only of that construction. It is unlike the provision in *Smith* v. *Mutual Life Ins. Co., supra,* that the "first monthly payments being due on receipt of said due proof." The provision there explicitly states not only when the company should commence the payments, but also the amount that would be first due which was a monthly payment. The disability clause in the case at bar provides that "the company will pay to the insured a life income of $10 each month * * *. The first payment of such income shall be made six months after receipt by the company of due proof of total and permanent disability."

This court has often held that, unless it is inescapable from the language of the policy that notice of disability and proof thereof are conditions precedent to recovery, it is the existence of disability that fixes liability and not the proof thereof. The liability then, under the finding of the jury, began on July 1, 1929, and continued until the date of the death of the insured, October 18, 1932. Therefore, the income would be the total of the monthly payments, the right to recover which (had the insured not been insane) would be deferred until six months after the receipt of proof by the insurer. *Smith* v. *Mutual Life Ins. Co., supra.*

The assignment of error argued in the sixth section of appellant's brief is that the court erred in directing the jury to deduct from the amount of its finding the loan of $955 with interest. If this was error, it was one of which the appellant cannot complain for the effect of it was to give to the plaintiff less than the amount to which she was entitled.

The seventh section of appellant's brief is a contention that the court erred in its rulings on the admissibility of evidence: first, in permitting the plaintiff to go into detail concerning the financial circumstances of the family and her expenditures in aiding Dr. Case; in permitting her to speak of the old age and feeble health of her mother and to recite certain calamities which had happened to the family. It must be remembered that

appellants urged the contention that plaintiff had been negligent in asserting the rights of her brother, and this testimony was brought out to in part excuse her delay. It was shown that just about the time she discovered her brother's insanity, another sister had died, and Miss Case was forced to take charge of her little children and care for them; that her mother was old and infirm and demanded her care; that her brother, Ed, died of pneumonia about the time that Dr. Case was removed to the asylum, and that her sister, a returned missionary, was dying of cancer in a hospital at Nashville. It is small wonder, under these circumstances, that Miss Case did not neglect many things of vital importance, and certainly these facts were admissible to excuse in part her seeming neglect. It is argued that the court erred in permitting Miss Case to state that she did not realize the mental and physical condition of her afflicted brother prior to August, 1930, but that, looking back, she realized that he was mentally incapable of practicing medicine in 1929, and that he was insane. She had stated the facts upon which this opinion was grounded, and, though she was not an expert witness, having given the facts upon which her opinion was based, that opinion was not incompetent.

Judge Reed testified that he considered Dr. Case practically an idiot. He referred to a time in the early part of 1929. This testimony is argued to be incompetent as Judge Reed was not an expert witness, but, as in the case of plaintiff, his opinion was founded on facts and circumstances which he narrated to the jury. This is applicable also to the testimony of witness Ellison, complained of, to the effect that, if he had had occasion to use a doctor, he would not have called on Dr. Case.

Error is also assigned to the refusal of the court to permit Dr. Brown to state on cross-examination whether or not, in his opinion, Dr. Case was mentally incapable of knowing that his insurance premium was due; also to the refusal of the court to permit defendant to elicit from Dr. Ponder the same information sought to be proved by Dr. Brown on cross-examination; also the refusal to permit the physicians to answer a question as to whether or

not Dr. Case had mental capacity sufficient to realize that his premium was due and his policy would be forfeited unless he gave proof of disability. The question before the jury was whether Dr. Case was totally and permanently disabled from insanity within the meaning of the policy, and it would be immaterial whether or not he was able to perform occasional acts relative to his business or to have an understanding of some of the matters relating thereto if his condition was such that he was unable to perform the duties of his profession, or those of any other vocation for which he might be fitted, in the usual and customary way. This testimony also was irrelevant for the reason pointed out in the case of *Pfeiffer* v. *Missouri State Life Ins. Co., supra,* where the court said: "It seems that the lay-witnesses for appellees thought that Pfeiffer was sane at times because he was able to talk rationally about the matters which were presented to his mind. This was not sufficient. He must have been able to carry on the ordinary affairs of life, and this meant that his mind must be capable of sustained effort so that he would comprehend such affairs as needed his attention, and not merely that he might talk with seeming intelligence upon a subject brought directly to his attention by some one."

Certainly, from the evidence, it is inescapable that, whereas Dr. Case might have had sufficient mentality, when his attention was called to it, to know that he had not paid his insurance premium, and that this would lapse the policy, his mind was not capable of sustained effort or such that he could comprehend his own condition or the effect of the provisions of his policy, and give that attention to them which would be expected of an ordinarily sane person.

Finally, it is insisted in the eighth section of appellant's brief that the court erred in the giving of certain instructions and in overruling certain others requested. We do not set out or comment upon these at length for the reason that the instructions given embodied the views we have expressed, and those requested were in conflict therewith.

On the whole case, we find no prejudicial error. The judgment of the trial court is correct, and it is therefore affirmed.