AMERICAN UNITED LIFE INSURANCE COMPANY *v.*
GOODMAN, GUARDIAN.

4-6116 146 S. W. 2d 907

Opinion delivered January 6, 1941.

 

*Daggett & Daggett,* for appellant.

*Mann & McCulloch* and *Burke & Burke,* for appellee.

HOLT, J. March 2, 1923, American Central Life Insurance Company issued to Elizabeth Taylor Sellers two policies of life insurance identical in terms for the principal sum of $2,500 under each policy. Appellant, American United Life Insurance Company, is the successor in interest of the original insurer.

These policies contained a provision by which, for the consideration of $7.43 included in the annual premium of $126.48, appellant agreed to pay disability benefits of $25 per month to the insured in the event of permanent and total disability as provided in the policy.

September 2, 1938, appellee filed suit in the Lee circuit court on each of these policies, seeking to recover on behalf of her ward, Elizabeth Taylor Sellers, under the total and permanent disability clause in each of the policies. The sum of $2,348.18, together with 12 per cent. damages and attorneys' fees, was sought in each case.

September 19, 1938, each of these causes was removed to the district court of the United States. Upon proper motions, they were remanded to the state court.

October 9, 1939, the trial court consolidated the two causes of action for the purpose of trial.

December 27, 1939, a petition for the removal of the consolidated causes to the district court of the United States was filed. The grounds being (1) diversity of citizenship; and (2) amount in controversy being in excess of $3,000: to-wit $4,696.36. January 3, 1940, this petition for removal was denied by the court.

January 3, 1940, the consolidated causes proceeded to trial. There was a verdict for the plaintiff in each case in the sum of $2,102.68. In addition to the verdict,

the jury returned into open court answers to two interrogatories submitted by the defendant, as follows:

"Interrogatory No. 1. Did Mrs. Sellers, in January, 1932, become as the result of disease, totally, permanently and incurably disabled; and has she so continued to be to the date of the filing of the complaint herein, to such an extent that she was from said date and continuously during the interim to September 2, 1938, thereby prevented from performing any work for compensation or profit or from following any gainful occupation as defined in the instructions?

"Answer: Yes.

"Interrogatory No. 2. Was Mrs. Sellers, during the interim between the period beginning January, 1932, and ending March 2, 1935, continuously mentally incompetent and deficient to such an extent as rendered her mentally incapable of comprehending and attending to such of her personal business affairs as she would have otherwise attended, as defined in the instructions?

"Answer: Yes."

Judgment was accordingly entered by the court in each case, together with 12 per cent. damages thereon, and an attorneys' fee of $250 to be taxed as costs. Thereafter appellant filed motion for a new trial, which was overruled, and this appeal followed.

Appellant assigns here four alleged errors as follows:

"1. The evidence adduced is insufficient to support the finding of the jury that subsequent to January, 1932, Mrs. Sellers was continuously mentally incompetent and deficient to such an extent as rendered her mentally incapable of comprehending and attending to such of her personal business affairs as she would have otherwise attended, so as to excuse her failure to give notice and make proof of the alleged disability, as provided in the policies sued upon. Therefore, the court erred in refusing to peremptorily instruct a verdict for defendant; and erred in refusing to give to the jury defendant's requested instruction No. 2.

"2. Total and permanent disability, as defined in the policies, was not proven. Therefore, the court erred in refusing to give to the jury defendant's requested instruction No. 1.

"3. The court erred in modifying defendant's requested instruction No. 7.

"4. The court erred in denying defendant's petition for removal to the United States District Court filed December 27, 1939."

We proceed first to discuss appellant's assignment No. 4. We think no error was committed by the trial court in denying appellant's petition for removal filed December 27, 1939, following consolidation of the two causes. Section 1289 of Pope's Digest applies here. That section is as follows:

"When causes of action of a like nature or relative to the same question are pending before any of the circuit or chancery courts of this state, the court may make such orders and rules concerning the proceedings herein as may be conformable to the usages of courts for avoiding unnecessary costs or delay in the administration of justice and may consolidate said causes when it appears reasonable so to do. Act May 11, 1905, p. 798."

It must be conceded that the two causes, which were consolidated for trial in the instant case, are "of a like nature or relative to the same question." The two contracts of insurance were identical in terms; the same parties were involved. Throughout the pleadings and trial, the identity of the separate causes based upon the two policies of insurance was maintained. The complaints, the answers, verdicts, judgments, etc., were separate. Clearly, we think the court properly consolidated the two causes for trial to avoid unnecessary costs and delay and no abuse of discretion is shown. The effect of consolidation in the instant case was to make the two consolidated suits one action on two causes of action and identity of the separate causes of action was maintained throughout the trial.

In *St. Louis-San Francisco Ry. Co.* v. *Oxford,* 174 Ark. 966, 298 S. W. 207, in considering the consolida-

tion of four separate suits for trial, this court said: "The consolidation of the causes for the purpose of trial only did not have the effect of merging the separate causes of action into a single cause of action. The identity of the separate causes of action was maintained throughout the trial."

This identical question seems to have been definitely determined against appellant's contention in *New York Life Ins. Co.* v. *Farrell,* 187 Ark. 984, 63 S. W. 2d 520. There it was said: "Appellant's first contention is that the court erred in overruling its petition for removal to the federal court. There were two separate suits, each one for $3,000. The court, without the suggestion of either party, but on its own motion, for the purpose of trial only, consolidated the two cases. That meant nothing more than the taking of evidence in the two cases at the same time. There was no consolidation for any other purpose, and there was a separate verdict, and separate judgment in each case." After considering several cases cited by appellant, this additional language appears in the opinion: "There is nothing in any of the cases relied upon by appellant that would justify or authorize a removal to the Federal Court."

We now pass to appellant's assignment No. 2 on the question of total and permanent disability.

The record reflects that at the time of the issuance of the policies in question, Mrs. Sellers was a saleslady, she followed this occupation until 1928 when she engaged in business for herself. In 1932 she became so afflicted with arthritis, disease of the gall bladder and other ailments that she was forced to give up entirely the business in which she was engaged and on account of her afflictions she has been confined almost continuously to her home up to the time of trial.

That part of the insurance contract pertinent here is as follows:

"If, while no premium is in default, the company shall, before the anniversary of the policy on which the insured's age at nearest birthday is sixty years, receive due proof of the disability of the insured, as hereinafter

defined, provided such disability has at the time of the receipt of such proof existed for not less than sixty days, the company will waive the payment of each premium as it may thereafter become payable, and will pay to the insured a monthly income of one per cent. of the face value of the policy as shown on the first page hereof, the first payment to be made six months after receipt of proof of disability and subsequent payments on the tenth day of each succeeding month during the continuance of such disability or until the face of the policy becomes payable. The premiums so waived and the disability income so paid shall not be deducted from the amount of the insurance, and the loan and cash values shall increase from year to year as though the premiums were being paid in cash.

"Disability of the insured within the meaning of this contract shall exist if the insured, as a result of accident or disease, shall have become totally, permanently, and incurably disabled to such an extent that he is thereby prevented and will be presumably permanently and continuously thereby prevented from performing any work for compensation or profit or from following any gainful occupation."

No proof of any claim for disability benefits under the policies was made to appellant company by Mrs. Sellers until in 1938.

A number of witnesses on behalf of appellee, including Mrs. Sellers' daughter, Mrs. Goodman, Dr. H. D. Bogart, her family physician for 20 years, Bessie Harrington, Elizabeth Harrington, Virginia Sutton, and Mary Spaine, gave testimony which tended strongly to show that Mrs. Sellers was totally and permanently disabled, within the meaning of that provision of the policy quoted above, from January, 1932, until the time of the trial.

We think it would serve no useful purpose to attempt to set out the evidence bearing upon Mrs. Sellers' physical disability. Suffice it to say that after reviewing the record, we think the testimony ample to warrant the jury's finding that she was totally and permanently dis-

abled from bodily disease within the meaning of the above, clause of the policy, from January, 1932, up to the time of trial.

This question of disability was submitted to the jury under appellee's instruction No. 1, which is as follows: "You are instructed that total disability does not mean such disability as renders the insured absolutely helpless, but total disability exists where the disease is of such a character and degree as to wholly disable the insured from doing all the substantial and material acts to be done in the prosecution of her business, and when common care and prudence would require a person in her condition to desist from the kind of labor she has performed prior to her illness."

Instructions similar to this as being proper declarations of the law, have been approved many times by this court.

In *Ætna Life Ins. Co.* v. *Spencer,* 182 Ark. 496, 32 S. W. 2d 310, this court in an opinion delivered by the late Chief Justice HART, stated the rule as to what constitutes total disability under insurance contracts similar to the one here, in the following language: "Total disability is generally regarded as a relative matter which depends largely upon the occupation and employment in which the party insured is engaged. This court has held that provisions in insurance policies for indemnity in case the insured is totally disabled from prosecuting his business do not require that he shall be absolutely helpless, but such a disability is meant which renders him unable to perform all the substantial and material acts of his business or the execution of them in the usual and customary way." See, also, *Pacific Mutual Life Insurance Co.* v. *Dupins,* 188 Ark. 450, 66 S. W. 2d 284; *Mutual Life Insurance Co. of New York* v. *Dowdle,* 189 Ark. 296, 71 S. W. 2d 691; *Missouri State Life Insurance Co.* v. *Case,* 189 Ark. 223, 71 S. W. 2d 199; and *Jefferson Standard Life Insurance Co.* v. *Slaughter,* 190 Ark. 402, 79 S. W. 2d 58.

The court did not err, therefore, in refusing to give defendant's requested instruction No. 1 which would have

told the jury that the proof on the part of appellee was insufficient to show total and permanent disability within the meaning of the policies sued on.

We come now to consider appellant's assignment No. 1 which is the most serious question presented here and has given us much concern. Upon this phase of the case the question that we must determine here is: Is there substantial evidence to support the jury's finding that Mrs. Sellers was, during the period from January, 1932, to March 2, 1935, incapable mentally of such sustained effort as would enable her to comprehend such affairs as needed her attention, and incapable of carrying on the ordinary affairs of life?

We are not here concerned with where the preponderance of the evidence lies. That question was determined by the trial court on appellant's motion for a new trial.

If we find here on appeal that there is evidence in the record of a substantial nature on behalf of appellee, then we must affirm the jury's verdict. The degree of mental incompetency that would excuse Mrs. Sellers, the insured, from giving the notice in the instant case to the insurer was defined by this court in the case of *Pfeiffer* v. *Missouri State Life Ins. Co.,* 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 600, in the following language: ". . . it seems that the lay witnesses for appellee thought that Pfeiffer was sane at times because he was able to talk rationally about the matters which were presented to his mind. This was not sufficient. He must have been able to carry on the ordinary affairs of life and this meant that his mind must be capable of sustained effort, so that he would comprehend such affairs as needed his attention, and not merely that he might talk with seeming intelligence upon a subject brought directly to his attention by someone."

And in *Equitable Life Assurance Society* v. *Felton,* 189 Ark. 318, 71 S. W. 2d 1049, this court held (quoting headnote No. 1): "Under a policy providing for benefits in proof of total and permanent disability, failure of insured to furnish such proof did not bar recovery if,

by reason of disease and illness, insured was mentally impaired to the extent that he was incapable of carrying on ordinary affairs and incapable of such sustained effort as would enable him to comprehend such affairs as required his attention."

This rule seems to have been accepted by the trial court and embodied in the instructions given. It was not incumbent on appellee to prove that Mrs. Sellers was permanently and incurably insane during the period from January, 1932, to March 2, 1935, in order to excuse her from giving the required notice within that time, but appellee was required to prove that Mrs. Sellers was mentally incapable of such sustained effort as would prevent her from comprehending and attending to the ordinary affairs of life.

We now proceed to consider the evidence bearing upon Mrs. Sellers' mental incapacity from January, 1932, to March 2, 1935. When we analyze this testimony in its most favorable light to appellee and give to it its strongest probative value, as we must do, if we find it to be substantial, then it becomes our duty to affirm the judgment of the lower court.

Mrs. Faber Sellers Goodman, daughter of the insured, testified that she has lived with her mother all of her life; that her mother engaged in business for herself in 1928 and continued until 1932 when she was forced to give up entirely her business on account of arthritis and gall bladder trouble; that these diseases were so painful and serious as to bring on spells and cause her mother to fall on the floor of the store, her joints to swell, and forcing her mother to go to bed; that during 1932 and 1933, and up to the present time, the arthritis has been continuous and she suffers extremely bad spells with it. During the spells her mother is extremely nervous and must have hypodermics and stimulants, and she does not act normal, seems to be in another world and her ideas about things are hazy. These spells usually last three or four days, appearing on an average of every two weeks. Between these spells her mother seems "rather normal."

She further testified that she had attended to all of. her mother's business since 1932, such as paying taxes and insurance premiums on her mother's insurance policies and writing letters.

Dr. H. D. Bogart, Mrs. Sellers' family physician for more than 20 years, testified that he began treating her for arthritis in 1926 and that she became totally disabled from the ravages of this disease in January, 1932. In treating her it was necessary to administer strong sedatives and many times morphine; that for at least four years subsequent to 1932 Mrs. Sellers suffered almost continuously from this disease and would not get entirely relieved from one attack until another would be upon her, and quoting from his testimony:

"Q. Since the first four years they haven't come so often? A. No. sir. Q. What was the duration of the attacks she would have, approximately? A. Four or five days. Q. Were there ever any of them that lasted longer than that? A. Possibly some of them lasted a week before they began to get better. Q. During the time of the attack was she in constant pain? A. Yes, unless she was under the influence of a drug. Q. So it was necessary to give her either a sedative or an opiate every time and by the time the effects of one left it was necessary to give her another one? A. Yes, sir. Q. That would continue as long as the spell lasted? A. Yes, sir. Q. Between these attacks was it ever necessary to give her any opiates? A. I didn't give her any opiate, but sometimes she would have to take a sedative. Q. What was her mental condition as a result of these attacks and the treatment you gave to relieve it during the time from January, 1932, up to the present time? A. Well, naturally, the effects of those opiates and the sedatives would, naturally, affect the entire nervous system, the brain structures, she was, most of the time, mentally incompetent while she was taking this. Q. That was a direct result of the disease? A. And the drug too, if she was not under the influence of the drug she was suffering physical pain and that kept her mind on her physical condition. Q. So you state that when she was in that condition she was mentally incompetent? A. Yes,

—PAGE 643]

sir, when she was under the influence of these drugs. Q. This condition has existed from January, 1932, to the present time? A. Yes, sir. Q. And her disability, as a result of the arthritis, has continued from January, 1932, to the present time? A. She has been totally disabled since 1932. Q. From your knowledge of the case, what is your opinion with reference to the future, will she get better and become able to go about her business, or not? A. No, sir, I don't think there is ever a chance for her to get better. Q. So, she is permanently disabled at the present time and will continue so the rest of her life? A. She is permanently disabled for the rest of her life.''

There was other testimony of probative value tending to corroborate Mrs. Goodman and Dr. Bogart.

Appellant produced as a witness a handwriting expert who gave it as his opinion that a great many letters in evidence written to appellant with Mrs. Sellers' name signed to each, and written over a period from 1932 to 1938, were in the handwriting of Mrs. Sellers, the insured. Mrs. Goodman contradicted this testimony and testified that these letters were written by her for her mother. This, however, was a question for the jury and has been determined adversely to appellant's contention.

There was also evidence on the part of appellant that Mrs. Sellers taught a number of students stenography at her home, which, it is claimed, strongly indicates mental competency on the part of Mrs. Sellers. Upon a review of the testimony in this regard, however, it appears that only two students received any instructions from Mrs. Sellers during the time from January, 1932, to March 2, 1935. One of these students during the latter part of 1934 and the other in the early part of 1935, took a few lessons from Mrs. Sellers at her home. It does not appear that there was any substantial consideration for these lessons and there is evidence tending to show that Mrs. Sellers, during these times that she was trying to teach, was suffering great pain and was not normal mentally.

As we have indicated, while the question is a close one, after a review of the testimony of all the witnesses,

we cannot say as a matter of law that there is no substantial evidence to support the jury's verdict and, therefore, no error was committed by the trial court in refusing to instruct a verdict for appellant as requested in its instruction No. 2.

Finally appellant insists that the court erred in modifying its requested instruction No. 7. As requested, the instruction is:

"Plaintiff would not be entitled to recover in this suit by merely showing that there has been an impairment of her ability to work for compensation or profit or to follow a gainful occupation. She must show by a preponderance of the evidence that she was disabled to the extent where she could not perform any of the material and substantial duties of a gainful occupation.

"You are further instructed that even though you should find that Mrs. Sellers is now totally and permanently disabled, she would not thereby be entitled to recover in this action; the burden of proof is upon her to show by a preponderance of the evidence that she was wholly and permanently disabled, within the meaning of the instructions heretofore given you, on a date prior to March 2, 1935."

The court refused to give the instruction in the form requested, but modified it in the second sentence of the first paragraph to read as follows: "She must show by a preponderance of the evidence that she was disabled to the extent where she could not perform all of the material and substantial duties of her usual occupation," and as modified, gave it to the jury.

We think, however, that no error was committed in giving this instruction, as modified, when read in connection with other proper instructions given, in view of the above cited cases and former holdings of this court.

On the whole case, the judgment is affirmed.